Good morning. May it please the court. I wanted to thank you for allowing our law student Josh Rothenberg to argue this case from the University of Michigan Law School and I'm here to supervise him today. Thank you. Thank you, Mr. Rothenberg. Did I say your name right, Rothenberg? It's not Rodenberg? Yes, Your Honor, it's Rothenberg. Okay, great. Go ahead. Good morning and may it please the court. Joshua Rothenberg for Mary Danielak. Your Honors, the Michigan Court of Appeals unreasonably applied Jackson v. Virginia when it allowed a jury's verdict to stand based upon speculation rather than evidence or rational inference. Specifically, the jury would have had to speculate as to the but-for cause element of aiding and abetting the delivery of a controlled substance causing death and as to the act or encouragement element of aiding and abetting the crimes related to the removal of Ms. Irving's body from Ms. Danielak's apartment. I'd like to begin with the aiding and abetting the delivery of a controlled substance causing death charge. The prosecution entered one witness to discuss the but-for cause element, their medical examiner, Dr. Cho. He testified repeatedly that there was a lethal dose of both cocaine and heroin in Ms. Irving's system that either could have killed her and that in his expert opinion, he could not say which was the cause of her death. Your Honors, that would necessarily have raised a reasonable doubt in any rational jury's mind. To overcome this doubt, the prosecution attempted to rely upon faulty logic. Namely, it argued that because heroin could cause pulmonary edema and cocaine could cause heart attack and because the medical examiner testified that Ms. Irving had died from a pulmonary edema, that heroin was the but-for cause of death. However, no evidence in the record suggested that cocaine could not cause pulmonary edema. This gap would have left the reasonable doubt fully intact. Wait a minute, it's not in the record. How does that help you? Your Honor, the question for the jury became whether cocaine could be the cause of death by causing pulmonary edema. I got you. The prosecution also relied upon the fact that the medical examiner testified that heroin was more consistent with the death than cocaine. This would have allowed a rational jury, we concede, to conclude by a preponderance of the evidence that heroin rather than cocaine was the but-for cause of death. However, that is not a reasonable doubt and it is in fact far shy of one. Counselor, I'm trying to follow your more consistent with argument. Would counsel have been permitted to pose this question to the medical examiner? Can you say beyond a reasonable doubt that heroin caused the victim's death? Would that be an admissible question? Well, Your Honor, of course that would be an opinion as to an ultimate issue of fact. But I think what's important here is that what they could have asked is whether cocaine could cause pulmonary edema and how much more consistent it was. So that's not a permissible question. You never get that in because it calls for a legal conclusion. Yes, Your Honor. So could he have asked, can you say by a preponderance of the evidence that heroin caused the death? Would that be a proper question? I'm not certain, Your Honor, because it's not an ultimate issue of fact in this case. But our contention is not that he said it was by a preponderance of the evidence, but rather that by the more consistent statement, a jury could have concluded that. Does it call for a legal conclusion? Yes, Your Honor. Isn't that what you're arguing? You're making the factual statement by the examiner that it's more consistent with. You're turning that into a legal argument as though the medical examiner has made a legal conclusion. Isn't that what you're – Respectfully, Your Honor, that's not my goal here. My point is that what the jury could have concluded from his testimony was that it was possible by a preponderance of the evidence, but not beyond a reasonable doubt. Because knowing simply that between the two causes, one is more consistent than the other, the jury did not know how much more consistent or what chance there was that cocaine was the cause of Ms. Irving's death. And that was what they needed to figure out. But they'd have to have – they'd have to have been told legally the difference between preponderance and reasonable doubt, wouldn't they? Yes, Your Honor. And that's the argument. Well, okay. So, Your Honor, to be clear, our argument is that what the prosecution could have done in this case to fill this gap is asked the medical examiner whether cocaine could cause a pulmonary edema, how likely cocaine was to cause a pulmonary edema, how likely cocaine was to be the cause of death via pulmonary edema when the person died. And there was also heroin in the victim's system. But rather than pushing on those questions, they relied upon this faulty logic and hoped that the jury would conclude from the mere statement that cocaine can cause a heart attack that it could not cause a pulmonary edema. And, Your Honor, that was the exact reasoning relied upon by the Michigan Court of Appeals, and it was unreasonable. Please go ahead. I'm sorry. Not at all. You recognize there's a twice-deferential standard of review. So how do you reconcile that with your argument? Because we have to defer not only to the verdict but also to the State Court's ruling on this. Yes, Your Honor. We do recognize that there is double deference here. However, this Court's precedent, namely Brown v. Palmer, establishes that relying upon speculation rather than evidence or inference, allowing that to go forward is an unreasonable application of Jackson because Jackson makes quite clear that the only permissible categories are evidence or reasonable inference. Moreover, in this particular case, that gap in the record should have been clear to them because the logic was so faulty that any reasonable juror should see that cocaine can cause heart attack is not the same statement as cocaine cannot cause pulmonary edema. And yet that's precisely, that's precisely, Your Honor, what the Michigan Court of Appeals relied upon in its conclusion here. I'd like to ask you a question which I think may be difficult because it's not exactly what the Michigan Court reasoned. But doesn't your argument depend on the idea that under Michigan law, if you have two concurrent criminal causes, each one can keep the other one from being the cause? Yes, Your Honor, we do. And for that, we'd cite People v. Schaefer, which is a Michigan Supreme Court case. The substantive law to be applied here, of course, is Michigan law. People v. Schaefer? Say it again? Schaefer. I believe it's S-C-H-A-E-F-E-R. And it is in our opening brief. My clerk came up with a case that may be distinguishable. I don't know. But in it, the suggestion is that this is People v. Tims, that you can have concurrent criminal causation, and that's acceptable under Michigan law. They give us an example. If an infant died because it was locked in a hot car on a sunny day and the child was left there by two parents rather than one, neither could be found criminally responsible. And they say they reject that. So if the law were what that seems to suggest, that would undermine your argument then, wouldn't it? No, Your Honor. Why not? I believe that Tims is about concurrent causes in the sense of synthetic causes, that both parents could have done something and failed to do it. So both parents bear the responsibility. The equivalent here would be if there were testimony that heroin and cocaine acted on the child. The heroin was caused and could have killed them, was caused by one criminal, and the cocaine is caused by another criminal. Why isn't that the same? They give us another example. If a guest died in a hotel fire because another guest set off firecrackers, would that guest be exonerated by the fact that some other hotel guest somewhere else set a fire, and either fire would have burnt the hotel down? Why isn't that the same as one person provided cocaine, which is presumably illegal, and another person provided heroin, and that's presumably illegal? And they're concurrent causes. Is there a difference there? Yes, Your Honor. I believe in those hypotheticals. Once again, the fires may have worked together. There is more evidence that the two causes are concurrent in the sense that they both operate towards the same result. And in those cases — I don't see how they're working together. I mean, I used to teach torts in another life, and we argued about this stuff for days in class. Maybe you did, too. I don't know. But I'm not sure how they're different. Your Honor, the other thing is that in those cases there would also be attempt liability. People v. Schaefer makes quite clear that in the case of a much more similar statute here, the automobile homicide statute, that but for a cause means that the results would not have come about but for that cause. We do not know if Ms. Irving would have survived had she had only heroin in her system. That is something that we will never know. I do want to briefly address the act or encouragement prong of the removal of Ms. Irving's body. And I'd like to rest on my brief for the mens rea prong because even if my client knew that Mr. Reeser intended to commit an illegal act and did nothing to stop it under Michigan law, people v. Burrell, that is not enough. The jury here would have had to speculate based on two circumstantial pieces of evidence, namely that she awoke Mr. Reeser rather than calling the police and that she went to work and showered again rather than informing the police or the authorities. How about her e-mails? The text messages, Your Honor? Pardon? Text messages, Your Honor? Yes. Yes, Your Honor. So the text messages are not actually proof of aiding and abetting here because the timeline as regards them was not established. And under People v. Lucas, an accessory after the fact is not an aider and abetter and vice versa. And the timeline here did not establish that the text messages were sent before or during the commission of the crime as opposed to after the crime had already been committed. Are you conceding if they were before that that would be sufficient evidence to show aiding and abetting? Yes, Your Honor. If it was established beyond a reasonable doubt that the text messages had been sent before the crime was committed, that would be sufficient. However, that was not established here as recognized by the Michigan Court of Appeals when it relied upon the text messages solely for the mens rea component and not for the actus reus of aiding and abetting in this case. So you don't think the messages themselves were sort of ambiguous as to what their meaning was? Your Honor, we think that under the doubly deferential standards of AEDPA and Jackson, while we do think that they were ambiguous and it was argued on appeal, that at this particular point in the case's history that we cannot make that argument. Your Honor, the simple fact is that the prosecution left holes in its case and hoped the jury would patch them over with speculation, hoped that the jury would take the weak points of its case and make them strong. That is not allowed. They tried to allow for a preponderance of the evidence to take the place of beyond a reasonable doubt. That is not allowed no matter how deferential the standard. We ask that you reverse the district court's denial of habeas corpus and vacate my client's convictions. Thank you. Thank you, counsel. May it please the court. Jerry Skrodenborg, special assistant Michigan Attorney General for Respondent Appellate. We know the drill on a habeas case. It must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. What we have here is, no question, Danilak facilitated delivering a fatal dose of heroin to the victim and that takes care of it. Now, the basic rules for sufficiency, both in Michigan and under the federal standard, you look at in the light most favorable to the jury's verdict. You are not required to disprove all reasonable alternatives consistent with innocence and even circumstantial evidence is sufficient to convict. And then when you combine that with the habeas standard, it makes it a nearly insurmountable burden. I mentioned in my brief the Davis case from 2008 on Bonk signed by Judge Rogers. Danilak cannot meet this very high burden because the factors indicate that it was more likely heroin. Now, it comes out cocaine is a stimulant. If you die of an overdose of cocaine, it's because the heart stops. No evidence of a heart attack. Okay, and this is as both the Michigan Court of Appeals and the District Court analyzed. On the other hand, heroin depresses, that is consistent with an edema. Now, Danilak has come up with some circuit court cases. Well, you know, you've got to watch out when you're asking to grant a writ based on circuit court cases. I don't have the site for it, and I'm not sure there is a site, because this came out October 27, like five weeks ago. Peralt, P-E-R-A-L-T versus Smith. Not written by, but signed by Judge Rogers. At one point, hoping for a different conclusion, Peralt invokes two Sixth Circuit habeas cases. This court said, these cases do not constitute clearly established Supreme Court precedent. And, as I pointed out in my brief. I think we're familiar with those cases. Okay. The heart of their argument, as I understand it, is that it is firmly established that you have to, the proof has to be beyond a reasonable doubt. Oh, yes. So if the facts compel the conclusion that no one could find this beyond a reasonable doubt. Because, by definition, it's almost unknowable, which is what's going on when you have concurrent causes. Then, in order for it to be found beyond a reasonable doubt, you have to have something in addition to the concurrent causes. And what there is in addition, they claim, is just ephemeral, or very little. How much is there that gets you off evenly balanced? It's just two causes, each of which could have caused it. And that's what the evidence is. And the only thing that's getting past that is, what, the liquid in the lungs, or whatever. Is that right? Is that the status of the case? And the fact that there is no evidence of a heart attack. Remember. Now, to what extent was that all proven to the, was there enough there for a jury to find beyond a reasonable doubt that that was enough to say that. Oh yeah. Certainly. Let's see now. That's what it gets down to. The second paragraph. I'm sorry. The second transcript, May 18, 2011. I'm sorry I don't have the ID number. But page 97 of that, Dr. Cho testified an overdose is, through the heart, stop beating. A cocaine overdose. He specifically testified to that. What did he testify to? That a cocaine overdose occurs through the heart stop beating. Then on page 98 he said there is no evidence of a heart attack. If that's true, why wasn't he able to say that it was caused by one rather than the other? Because he is a doctor, a scientist who does not feel sufficiently comfortable specifically saying that. That's why. But the evidence is there. The jury could infer it even though he's not comfortable saying it. Absolutely. That's strange. And let's not forget under the habeas standard, it doesn't matter even if the court of appeals decision was wrong. That's beside the point. I understand that. It was, is it unreasonable that anybody could have and any reasonable person could have. Beyond a reasonable doubt. Oh yes, of course. Reasonable could have beyond a reasonable doubt. Yeah, that's right. But it's a double standard, I mean it's a double lever of deference. Which makes it nearly insurmountable. And as the district court said, there is nothing here. There is no problem with this particular case. Now, going over to the other issues, the ones on the other crimes. The essence here is in the third transcript. Page 127, I'm sorry. The May 19, 2011 transcript, page 127. As I understand your testimony, once Ms. Danilak was aware that Ms. Irving was dead, Ms. Danilak got on her phone and sent text messages to Ms. Irving's phone, apparently to make it look like, I know, I don't know she's dead. Yes, sir. Is that a fair summary of what happened? Yes, sir. That's the essence of why the evidence is sufficient for those last ones. At the very, very, very least, that is an obstruction of justice. She flat out admitted it. That is totally unrebutted testimony. There is no speculation there. That is good enough. Now, you can... What is the obstruction of justice? Is it her actually sending the text? As I understand it, it's aiding and abetting the obstruction of justice of moving the body. Yes.  To make it look like the person did not die at that time, to make it so that the police later on would not be able to connect to her room. But you would agree the texts themselves didn't do anything to... Well, actually... ...further the actual moving of the body. Not the actual moving of the body, but let's not forget, we don't have to specifically take a look at what the Michigan Court of Appeals said. Going back to the Peralt case, specifically saying, habeas review requires us to consider what arguments or theories supported or could have supported the state court's decision. Could have supported. Which is exactly what the district court did here, saying the text messages themselves, even though they didn't help move the body, they were an obstruction of justice. And that is sufficient under habeas review. We're not in a direct appeal. So, basically, in fact, when you come down to it... Obstruction of justice is after the crime, aiding and abetting is before the crime, is that... No, aiding and abetting is during the crime, and let's not forget that moving the body, it did not really end until they dumped the body. It wasn't merely moving it one inch, or even moving it out of the apartment. It was moving it all the way out to the creek bed. But I guess my question is, if that had all been concluded when these texts were sent, then there'd be a problem with convicting on aiding or abetting if that had all been concluded. No, because we know exactly why she sent the texts. To cover up. That is a reasonable conclusion. So, after the fact, covering up is okay under the law as part of aiding and abetting? I thought the law cited in the briefs that it isn't, so that's why I'm asking. After the fact, covering up is not. However, the only... That's their argument, then, is that this is after the fact, covering up, rather than... Yes, if you cover up beforehand, it's not really covering up. If you're a lookout at a bank robbery, you can still be aiding and abetting, even though you don't have a gun or grab the money. You've kept it from being discovered as it's happening. But their argument is this is after the fact, if I'm understanding. Is that right? No, I am not. That's not their argument? No, I am saying it occurred during the crime. And the only reasonable conclusion to draw from it is the only reason that she did it was to cover up that the body was being taken out of there. Why would she do it? Because she knew that it was not being taken out for proper purposes. I don't see how saying it's covering up makes it during the act. You could have an after the act of covering up. So just saying it's not a cover-up, it's not after the crime because it was covering up, doesn't tell you, isn't the same thing as saying that it happened during the crime. Am I making sense? Yes. There is sufficient evidence to show that the reason that she did it was she knew exactly where, why the body was being taken out. And it was not being taken to a medical examiner or to the police. There is sufficient reason, as the district court correctly analyzed. In addition, and it was decided before they moved the body. Based on this evidence, that is a reasonable conclusion. Even if we disagree with that conclusion. So if you decide to cover something up after the fact, while the crime is going on, that's sufficient? That's what you seem to be suggesting. That I don't understand because how can it be after the crime, while the crime is going on? Don't worry, or you decide while the crime is going on, that you will cover it up afterwards. That's enough? I don't know, that's what you're saying. Oh yeah, that's part of the conspiracy. Oh yeah. All right. That's part of it. Oh yeah. Very simply, the bottom line here on this particular argument that we have here, this court back in 2012, United States versus Cunningham. Is this a conspiracy claim? Oh, I have made various conspiracy arguments. I'm asking if it's a conspiracy claim. It's mostly an aiding and abetting. It's not a conspiracy crime here. He wasn't charged with conspiracy. He was not charged with conspiracy, but under Michigan law, you don't have to charge with conspiracy to use conspiracy analysis. And, of course, we can use on habeas, we can use whatever analysis we want, consistent with Michigan law, to come up with the proper, reasonable approach. We can do that. United States versus Cunningham, 679F3355, page 371. But Cunningham's interpretation of the evidence is just that, his interpretation. Such a view is bolstered only if one draws all factual inferences in his favor. Now, Danilak has come up with, oh, wait a minute, we have to take a look at the jury instructions. Well, when you're dealing with sufficiency of the evidence, we do not have to. 2016, U.S. Supreme Court said, we do not have to. The jury instructions are not that significant. Musacchio, at least I assume that's how it's pronounced, I'm not too good at Italian, versus United States, 136, Supreme Court, 709. We don't have to worry about it. I'm asking the court to affirm, because under that habeas standard, there's nothing here. Thank you, counsel. Thank you. Mr. Rothberg. Thank you. Your Honors, double deference does not work a standard that protects the state when it tries to argue that preponderance of the evidence is beyond a reasonable doubt, or when it tries to argue that speculation is allowed under the Jackson standard. It is difficult, yes. It is not insurmountable. And this court most recently affirmed the grant of a habeas case on sufficiency of the evidence grounds this past August. Did the jury receive an instruction from the court on preponderance? I don't believe they did, Your Honor. I believe they only received the instruction on beyond a reasonable doubt. Well, how do you get to this argument that they could have convicted on preponderance when they don't even know what that is? The only thing they're trying to figure out is beyond reasonable doubt. Your Honor, my argument is not that they convicted based on preponderance, but that the evidence only proved it based on preponderance. They may have believed they had a reasonable doubt. There's some evidence in the record, I believe it's transcript 1110, that the jury had some confusion over the instructions on causation. That may have been what caused it. They may have simply not understood the beyond a reasonable doubt standard. I don't know what happened in the jury room. But I do know that the evidence was not sufficient to prove anything more than by a preponderance of the evidence. But I'm glad you brought up jury instructions, because in this case, the theory of conspiratorial liability was never instructed to the jury, which means the one thing we know did not happen in that jury room is that they made the legal conclusions necessary to determine that there had been a conspiracy sufficient for conspiratorial liability. They would have needed to have an instruction telling them that they needed to find an affirmative agreement, and that was just not present. Moreover, there is no Michigan appellate court law that we could find suggesting that there is conspiratorial liability where there is not a conspiracy charge. And I'll point out that the state cites this court's direct review precedent for that. But again, under Jackson, the substantive law to be applied is the law of the state. Your Honor, I want to pick up on something counsel said. Counsel said the jury in this case proved that heroin was more likely the cause of death. We agree that that is a rational conclusion to draw. We agree that under the habeas standard, that conclusion could have been drawn by the jury. Where we differ, Your Honors, is that we understand that more likely to be the cause of death is not the same thing as beyond a reasonable doubt. More likely to be the cause of death, especially when combined with repeated statements by the medical examiners, the medical examiner that he did not know which was the cause of death, is not enough, Your Honors. Again, usually it's pretty hard for us to draw the line where you can concede that a reasonable jury could conclude by a preponderance. And that jury is instructed under beyond a reasonable doubt that we're going to then second guess whether what was conceitedly enough for a preponderance didn't get to beyond a reasonable doubt. I mean, it's sort of like we have to rely on the system of proper instruction to draw that line. You know, you could conceive of a case like that. But if we start doing that, it starts to come in tension with this great deference that we're supposed to have, doesn't it? Your Honor, this is that case. This is the case in which the jury, what they received basically told them it was more likely. That's the furthest you can get with more consistent. And after the furthest they could get, there's still no way that a rational jury's reasonable doubt could have been surmounted here. And that is why, Your Honors, we ask you to reverse the denial of habeas. Thank you. Appreciate it. The case will be submitted.